**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LISA SNYDER,

                          CASE NO. 2:19-cv-12555

       *Plaintiff*,          DISTRICT JUDGE DAVID M. LAWSON

*v.*                   MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 12, 15)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff is not under a disability within the meaning of the Social Security Act. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 12), be **DENIED**, and the Commissioner's Motion, (ECF No. 15), be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title XVI Supplemental Income Security Benefits (SSI). (ECF No. 3.) This case is before the Court upon the parties' cross-motions for summary judgment. (ECF No. 12, 15.)

1

Plaintiff filed an application for SSI benefits on August 23, 2016, alleging that her disability began on May 1, 2010. (ECF No. 9, PageID.285.) The Commissioner denied the claim. (*Id.* at PageID.208.) Plaintiff requested a hearing before an ALJ on October 24, 2016, and a hearing was held on August 23, 2017. (*Id.* at PageID.225, 64.) The ALJ issued a decision on June 29, 2018, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (*Id.* at PageID.53-63.)

The Appeals Council denied review of the ALJ's decision, (*Id.* at PageID.29), and Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on August 30, 2019. (ECF No. 1.) She then filed the present Motion for Summary Judgment on December 23, 2019, (ECF No. 12), after which the Commissioner countered with its own Motion on February 24, 2020. (ECF No. 15.)

**B.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider

2

any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C.   Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or

3

equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 9, PageID.53-63.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application for benefits on August 23, 2016.[1] (*Id.* at PageID.56.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: generalized osteoarthritis; cervical and lumbar degenerative disc disease (DDD); chronic obstructive pulmonary disease (COPD); and obesity. (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.57-58.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> Light work as defined in 20 CFR 416.967(b), with the following additional limitations. She can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds, kneel, or crawl. She can occasionally stoop and crouch. Se must avoid balancing on narrow, slippery, or moving surfaces. She should avoid exposure to unprotected heights and dangerous machinery. She should avoid concentrated exposure to humidity, extreme cold and heat, and respiratory irritants such as dust, odors, and fumes. She is limited to occasional overhead reaching. She must alternate between sitting and standing approximately every 30 minutes (i.e., she would sit for that period of time, stand for a few minutes, and then sit back down). She is limited to frequent handling and fingering on the right hand and occasional handling and fingering with the left hand.

(*Id.* at PageID.58.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.60-61.) At step five, the ALJ found that Plaintiff has acquired

[1] The ALJ refers to Plaintiff's application for benefits on August 23, 2016, and Plaintiff's Motion indicates that her application was filed on August 23, 2016 as the "protective filing onset date." (ECF No.12, PageID.591.) However, the record indicates that Plaintiff applied for benefits on September 24, 2016. (ECF No. 9, PageID.285.) Either way, Plaintiff's application would have been prior to March 27, 2017, entitling her to the treating-source rule. While I note this discrepancy for thoroughness, it does not affect the analysis.

work skills from her past relevant work, and that those skills are transferrable to other occupations with jobs existing in significant numbers in the national economy. (*Id.* at PageID.61.) This finding relied on the testimony of the Vocational Expert (VE) about potential positions including that of information clerk, DOT code number 237.367-022, which is sedentary work with an SVP of 4, with approximately 981,000 jobs existing in the U.S. (*Id.* at PageID.62.)

### E.  Administrative Hearing

#### 1.  Plaintiff's Testimony

At the hearing held on August 23, 2017, Plaintiff testified that she does not have a driver's license, and occasionally gets rides from friends or takes a Lyft to get around. (ECF No. 9, PageID.69.) She used public transportation on the morning of the hearing but had not used it for about one year prior to the hearing—Plaintiff claimed that using public transportation, and sitting on the bus seats, bothered her knees. (*Id.* at PageID.70.) Plaintiff lives alone and is not employed. (*Id.*) She lives in an apartment, and in exchange for living there rent-free, she collects the rent from other tenants in the apartment building on behalf of the landlord. (*Id.*) Plaintiff has not worked since 2010. (*Id.*)

The ALJ pointed out a prior hearing in this case held in 2014, and that the decision in that hearing noted Plaintiff had past relevant work including "clerk typist" and "bookkeeper." (*Id.* at PageID.71.) According to Plaintiff, her position at her apartment complex is "very casual" and she does not have a formal title. (*Id.* at PageID.72.) She does not get paid, but instead lives rent-free in her apartment as compensation. (*Id.*) Her duties include, "if Edison shows up to read the meters, I have to take them down to the basement

6

and let them in to read the meters[,]" which occurs about once a month. (*Id.*) She also "pass[es] on any problems the tenants bring to [her] to the ownership and to the maintenance staff." (*Id.*) Plaintiff claims, regarding her duties in exchange for the apartment, "that's basically it." (*Id.*)

Plaintiff explained that she can no longer work because of her arthritis. (*Id.* at PageID.73.) She testified that she has arthritis in both knees, both hips, both hands, both shoulders, and her entire spine, with three particularly "bad spots." (*Id.*) Plaintiff had arthritis during her hearing in 2014 but claimed that it has gotten worse since then. (*Id.*) For example, Plaintiff claimed that her left shoulder is now "completely shot[,]" meaning that it had "no internal cartilage left" and her range of motion was limited. (*Id.*) Although she had no surgeries scheduled, Plaintiff claimed that she was working on scheduling surgery for her left shoulder and both of her knees. (*Id.* at PageID.73-74.) Plaintiff also claimed that she cannot type anymore due to the arthritis in her hands. (*Id.* at PageID.74.) Plaintiff takes 800 milligrams of Ibuprofen three times a day and Lyrica three times a day for her pain, and Norco when her pain is "particularly bad." (*Id.* at PageID.75.) Even after taking these medications, Plaintiff claims, her pain is still "a seven or an eight" out of 10. (*Id.*)

On an average day, Plaintiff, who lives alone, wakes up, takes a shower, and feeds her cats. (*Id.* at PageID.76.) She prepares her own meals but has difficulty washing the dishes and must "set them down flat to wash them." (*Id.* at PageID.75-76.) She is able to do her laundry but needs held carrying it up and down the stairs to the laundry room in the basement of her building. (*Id.* at PageID.78.) Plaintiff also acknowledged her depression

diagnosis, for which she takes medication, and stated that she has struggled with it all her life. (*Id*. at PageID.79.) Plaintiff testified that she could walk approximately one block without experiencing pain, could stand for about 10 minutes, and has to stand and move her knees every 20-30 minutes when sitting. (*Id*. at PageID.80.) Plaintiff estimated she could lift up to five pounds but could not reach overhead with her left shoulder. (*Id*. at PageID.81.)

When questioned by her attorney, Plaintiff elaborated that while she does cook for herself, she can only make "simple" meals that do not require heavy chopping or use of her cast iron skillet or roaster, which are too heavy for her. (*Id*. at PageID.81-82.) Plaintiff testified that she drops things frequently and does not sleep well at night due to her insomnia, restless leg syndrome, and pain in general. (*Id*. at PageID.82.) Plaintiff stated that she goes to a doctor or medical appointment approximately three times a month. (*Id*. at PageID.84.)

### 2. The VE's Testimony

The ALJ asked the VE to consider a hypothetical individual who is

> limited to light work as defined by the regulations. They can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds. They cannot kneel or crawl. They can occasionally stoop and crouch, but they must avoid balancing on narrow, slippery, or moving surfaces. They should avoid exposure to unprotected heights and dangerous machinery. They should avoid concentrated exposure to humidity, extreme cold and heat, and respiratory irritants such as dust, odors, and fumes. They're limited to occasional overhead reaching. They must alternate between sitting and standing every 20 to 30 minutes.

(*Id*. at PageID.87-88.) The ALJ then asked whether such an individual could perform any of Plaintiff's past work. (*Id*. at PageID.88.) The VE testified that the hypothetical exertion

requirements "would fit" Plaintiff's past work experience, (*id*.), and clarified that "[t]he positions that were previously held are ones that the sitting and standing option normally would not apply as they would be seen as sedentary positions where the person would sit in front of a desk the majority of the time." (*Id*.) The VE further testified, after clarifying the sit-stand requirement with Plaintiff, that "if it's alternating positions every 30 minutes, and it's only for a couple minutes, even if that person was off task, that time would be within the acceptable limits of that, but also, I believe with the two positions it would still be able to be performed based on that because part of the duties of those jobs would be, at times, to get up and maybe go to the copy machine or to, you know, file something, things of that nature." (*Id*. at PageID.89.)

The ALJ then asked whether an individual who was "limited to frequently handling and fingering" would be able to perform Plaintiff's past work. (*Id*. at PageID.89-90.) The VE responded such an individual would be able to perform Plaintiff's past work. (*Id*. at PageID.90.) The ALJ then asked whether an individual who was "limited to frequent handling and fingering with the right hand, and occasional handling and fingering with the left hand" would be able to perform Plaintiff's past work. (*Id*.) The VE stated that Plaintiff's prior positions required at least frequent handling and fingering bilaterally, so such an individual, who was limited to occasional handling and fingering on the left hand, could not perform Plaintiff's past work. (*Id*.)

The VE explained, however, that Plaintiff had acquired transferable skills from her past work. (*Id*.) These skills include the ability to: "type, read, write, do simple to complex math, documentation skills, operating computers, office equipment, the ability to

independently think, make decisions, work independently or as a team, organization skills, dealing with people, and clerical skills such as filing and things of that nature." (*Id*. at PageID.91.) Based on the final hypothetical posed by the ALJ, which included only occasional handling and fingering on the left hand, the VE determined that "there would be a couple positions [] with those restrictions that the skills would transfer into at sedentary, semi-skilled." (*Id*. at PageID.92.)

The VE specified that an acceptable position would be information clerk, DOT 237.367-022, SVP 4, semi-skilled, sedentary exertion (981,000 jobs). (*Id*.) The VE believed that this position would require little to no vocational adjustment from Plaintiff's past work, and could be learned in "two weeks or less without any issues[.]" (*Id*.) Finally, the VE testified that his testimony had been consistent with the DOT, but that some of the factors suggested by the ALJ, such as a sit/stand option and the occasional overhead reaching, were factors not listed in the DOT. (*Id*. at PageID.93.)

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories:

---

[22]   Various amendments have been made to the regulations since Plaintiff filed his claim.  *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations

"acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at

---

went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.

2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's

work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.   Arguments and Analysis

Throughout her Motion, Plaintiff asserts that substantial evidence does not support the ALJ's decision, arguing that the RFC assigned by the ALJ inaccurately reflects Plaintiff's actual functional capacity. (ECF No.   12, PageID.587.) Specifically, she challenges the ALJ's finding that Plaintiff "can occasionally stoop and crouch[,]" "[s]he is limited to occasional overhead reaching[,]" and "[s]he is limited to frequent handling and fingering with the right hand and occasional handling and fingering with the left hand." (*Id.* at PageID.591-592.) Plaintiff seems to advance three arguments to that end: 1) the ALJ erred in designating Plaintiff's RFC as light work; 2) the ALJ did not provide specific citation to the record to support her conclusion; and 3) the ALJ's RFC is contrary to the consultative examiner's opinion. I address each argument in turn.

### 1.   Light work designation

First, Plaintiff argues that the ALJ inappropriately categorized Plaintiff's RFC as light work, which is defined by 20 C.F.R. § 404.1567 and § 416.967(b) as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

However, the RFC assigned by the ALJ included "additional limitations" to that definition.

15

(ECF No. 9, PageID.58.) These "additional limitations" included: occasional climbing of ramps and stairs, no climbing of ladders or scaffolds, no kneeling or crawling, occasional stooping and crouching, avoidance of certain environmental irritants, occasional overhead reaching, alternating between sitting and standing every 30 minutes, and occasional handling and fingering on the left hand. (*Id*.)

Contrary to Plaintiff's argument, the ALJ considered Plaintiff's limitations and complaints of pain in her shoulder, hands, and knees, and included appropriate restrictions to the RFC; specifically, the ALJ included limiting her overhead lifting to occasional, her left handed handling and fingering to occasional, and her kneeling and stooping to occasional.

Still, after acknowledging her impairments as severe, the ALJ found, based on the record medical evidence and the testimony of the VE, that Plaintiff had the RFC to perform certain sedentary work, such as information clerk. And as Defendant points out, although Plaintiff takes issue with the light work designation in the RFC, the information clerk position specified by the VE and adopted by the ALJ is actually sedentary work, which is even more restrictive in terms of physical ability than light work. (*Id*. at PageID.62.) The ALJ noted that "the medical evidence is not entirely consistent with the claimant's allegations of debilitating symptoms[,]" (*Id*. at PageID.60), and that she had transferrable skills which would be easily transitioned into an information clerk position. (*Id*. at PageID.62.) The record contains medical reports which indicate "moderate degenerative changes" in Plaintiff's right shoulder, (*Id*. at PageID.533), good bilateral handgrip despite arthritis, (*Id*. at PageID.567), "mild hip OA[,]" (*Id*. at PageID.365), muscle strength rated

16

as 5/5 and 4/5, (*Id.* at PageID.381), and "hip range of motion [that] is smooth and painless."
(*Id.* at PageID.520-521.)

The ALJ did properly consider Plaintiff's impairments, appropriately added additional restrictions to the RFC, and adopted an available position for Plaintiff which was categorized as sedentary work. The ALJ's conclusion was supported by substantial evidence in the record, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. Thus, I suggest that this argument fails and the ALJ has not erred.

### 2. Citation to medical evidence

Next, Plaintiff argues that "the ALJ did not specifically explain what medical evidence was used to arrive at the RFC[.]" (ECF No. 12, PageID.603.) However, The ALJ cited to several medical reports and results in the record in reaching her decision. (ECF No. 9, PageID.59-60.) The ALJ noted hip x-rays from March 2016 which were "mild in their results," hip x-rays from May 2016 with "mild degenerative changes," and that a "September 2016 bilateral upper extremity imaging revealed marked abnormalities, including severe right acromioclavicular joint narrowing and marked degenerative blunting of the bilateral posterior labra, and advanced degenerative changes of the bilateral glenohumeral and AC joints with the right more sever than the left." (*Id.* at PageID.59.) The ALJ relied on, and cited to, several pages of medical findings in her written opinion. (*Id.* at PageID.59-60.)

Ultimately, the ALJ concluded that "the medical evidence is not entirely consistent

17

with the claimant's allegations of debilitating symptoms." (*Id.* at PageID.60.) Indeed, as I have previously noted, a medical report from May 5, 2017, indicates "moderate degenerative changes" in Plaintiff's right shoulder, (*Id.* at PageID.533), and the consultative examiner noted in his report that while she has arthritis in both hands, "[t]he handgrip, however, is good bilaterally during this examination with intact digital dexterity." (*Id.* at PageID.567.) A report from May 13, 2016 indicates that an x-ray of Plaintiff's left hip showed "mild hip OA." (*Id.* at PageID.365.) The May 13, 2016 report also indicated that Plaintiff's muscle strength was rated as 5/5 and 4/5. (*Id.* at PageID.381.) A June 19, 2017 exam noted that in Plaintiff's left lower extremity and right lower extremity, "hip range of motion is smooth and painless." (*Id.* at PageID.520-521.)

The ALJ did thoroughly cite to the medical record and did support her decision with those citations. Further, my review of the record suggests substantial evidence to support that decision. *Rogers*, 486 F.3d at 241. I suggest that this argument fails and the that ALJ has not erred.

### 3. Opinion of the consultative examiner

Finally, Plaintiff argues that the RFC is contrary to the opinion of the consultative examiner, Moises Alviar, M.D. Plaintiff argues that the RFC "[lacks] any restrictions whatsoever for pushing, pulling, lifting, feeling, or reaching[;]" however, Plaintiff then concedes that there was, in fact, a limitation for overhead lifting: "except as to overhead, which was limited only to occasional[.]" (ECF No. 12, PageID.603.) Plaintiff also takes issue with the occasional stooping and crouching in the RFC, arguing that Alviar recommended "no kneeling, stooping, or crouching at all[,]" and that Plaintiff should

18

"never kneel, crouch, or crawl." (*Id*. at PageID.603-604.) I note, however, that in Alviar's report, he suggests occasional stooping. (ECF No. 9, PageID.572.)

Alviar examined Plaintiff on October 18, 2017 and concluded that Plaintiff could occasionally lift up to 10 pounds, sit for 20 minutes at a time and stand for 15 minutes at a time, and was restricted to occasional reaching, handling, and fingering bilaterally, but that she should never push or pull, in addition to other restrictions. (ECF No. 12, PageID.595-596; ECF No. 9, PageID.569-571.) The ALJ assigned partial weight to Alviar's opinion. (ECF No. 9, PageID.60.) But the ALJ also gave the state medical consultant little weight—according to the ALJ, "neither [opinion] is entirely consistent with the record." (*Id*.) The ALJ made the following observations regarding Alviar's opinion: "There have been a number of abnormal musculoskeletal or neurological clinical signs, albeit in some cases only on an intermittent basis; however, there is also a substantial body of normal such signs." (*Id*.) The ALJ continued, "[m]edical imaging has been quite severe as regards to the shoulders, but mild or moderate as regards other joints or the back." (*Id*.) Concerning Alviar's opinion, the ALJ found that "[t]hese considerations support significant exertional and postural limitations, but not to the degree provided for by the consultative examiner." (*Id*.)

But the ALJ did not find the state medical examiner's opinion to be completely accurate, either: "[o]n the other hand, the state medical consultant does not adequately provide for, e.g., the postural limitations the claimant would experience, based on these considerations." (*Id*.) The ALJ concluded, "neither opinion is entirely consistent with the record; I gave the consultative examiner's opinion more weight because he actually

19

examined the claimant. However, since it is based on a single examination, it does not offer a longitudinal representation of the claimant's functioning and has been discounted accordingly." (*Id.*)

The six-factor test employed by the ALJ considers whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). The ALJ carefully considered each medical opinion against the objective evidence in the record and their relationship and history with Plaintiff, and ultimately found that neither one was completely reliable—to Plaintiff's advantage, as Defendant points out, the ALJ assigned even less weight to the less-restrictive state medical consultant's opinion. Indeed, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels*, 882 F. Supp. at 640-41. Upon review of the medical evidence in the record, the ALJ provided "good reasons" for the weight assigned to Alviar's opinion, 20 C.F.R. § 404.1527(c)(2); *see also Dakroub*, 482 F.3d at 875, and did not err in assigning little weight to his opinion or departing from it. Therefore, I suggest that this argument fails and that the ALJ has not erred.

Giving appropriate weight to the respective treating sources, and to all of the evidence in the record, the ALJ found that even in light of Plaintiff's limitations, her RFC was could be appropriately designated as light work with several additional restrictions, and she could perform certain sedentary work. I suggest that the ALJ's conclusion was

supported by substantial evidence, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241.

### H.    Conclusion

For these reasons, I conclude that substantial evidence does support the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 12), and **GRANTING** the Commissioner's Motion. (ECF No. 15).

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 30, 2020                                      S/ PATRICIA T. MORRIS
                                                          Patricia T. Morris
                                                          United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 30, 2020                                       By s/Kristen Castaneda
                                                          Case Manager